RAWLS, Judge.
The defendant in an action for damages for breach of an oral agreement has appealed from a final judgment entered by the Circuit Court for Duval County, based upon a jury verdict.
The primary question presented for our determination in this appeal is whether the terms of the said agreement were sufficiently proven at the trial.
Briefly stated, the plaintiff alleges in its complaint as follows: that the plaintiff is a corporation engaged in the business of importing Volkswagen automobiles into the United States and the defendant is a Florida banking corporation engaged in the business of general banking in Duval County, Florida ; that during the period from about August 8, 1960, to December 5, 1960, the plaintiff imported into the United States through the port at Jacksonville, Duval County, Florida, a total of 717 Volkswagen automobiles which were owned by the plaintiff; that, upon being unloaded, each car was taken into physical possession by a warehouseman in Duval County pursuant to a prior agreement between such warehouseman and the plaintiff; that the defendant orally agreed with the plaintiff on or about August of 1960, for the consideration of $1.00 per car, to act as a trustee for the plaintiff and take possession of transferable indicia of title and other papers applicable to each of the cars upon receipt by the defendant of cash, certified checks, or bank checks, in payment for each of such cars in the amount designated by the plaintiff to the defendant as being the sales price for each car, and only upon receipt of such payment, the defendant would surrender the transferable indicia of title and other applicable papers to the purchaser of the said cars and would instruct the warehouseman to surrender possession of each of such automobiles for which payment had been received to the person or persons designated by the defendant, which would deduct its charge of $1.00 per car from the funds it received and would remit the balance to the plaintiff’s bank.
The plaintiff then alleges in its complaint that it placed all of the transferable indicia of title and other papers applicable to each of 717 Volkswagen automobiles into the custody of the defendant; that the defendant issued instructions to the warehouseman to release all of the 717 Volkswagens and none now remain in the custody of the warehouseman, yet the defendant has remitted to the plaintiff, less the charge of $1.00 per car, funds for only 670 of the said 717 Volkswagens, and has failed to pay the plaintiff for the remaining 47 cars, with a fair market value of $72,180.00.
The case went to trial on the above allegations plus the allegations of the answer, in which the defendant denied the making of the above agreement and denied most of the remaining allegations of the complaint.
Material testimony adduced by plaintiff, which the jury was free to believe, is summarized as follows: Fred S. Drimer, secretary of the plaintiff corporation and a former salesman for Delaware Motors Corporation, testified that he conferred at the defendant bank with Deryle I. Calhoun, the *731 defendant’s vice president, and told the latter that they had a new corporation and were “going to bring in the cars in the same way we used to bring them for Delaware Motors, and we would like to handle the operation same as Delaware Motors, the same agreement”. Drimer further testified, “The understanding, we were to issue to the bank all the titles to them, and he [Calhoun, vice president of the bank] should issue delivery orders for each car against good funds and giving the titles to the party, Mr. Laverne Moore, against good funds.” Likewise, Morris Schuller, CPA for both Delaware Motors and Lowni Corporation, testified, “The basic terms I discussed were my understanding from the conversation was the bank was going to act as trustee and have all the titles in their possession. The cars would be at our own independent warehouse or an independent warehouse. Mr. Calhoun was to issue and deliver a delivery order for the cars and the titles * * * for Mr. Moore, to the place where the cars were being kept for Mr. Moore, against cash or other good funds.”
In April I960 Schuller wrote a letter to Drimer setting forth the exact wording of the agreement between Delaware Motors and Florida Northside Bank. In this letter he instructed Drimer to have the bank state that agreement on its stationery. This the bank did on May 2, 1960, on its own stationery, and signed by Deryle I. Calhoun, vice president. This agreement reads as follows:
“We will act as trustees on behalf for Delaware Motors Corp. of 200 W. 72nd. Street, New York 23, N. Y. as issuer of Delivery Orders and titles to Bozarth Auto Import Servicing Inc. only against receipt of Good Funds ie, Certified Checks or Bank Checks.
“Such funds will be wired directly to your bank, The Franklin National Bank, 925 Hempstead Turnpike, Franklin Square Li, New York account of Delaware Motors Corporation.
“Our charge will be $1.00 per car; such sum to be deducted from funds received by us against our issueing delivery orders. We will then remit the net funds to your bank.”
Both of the above-mentioned letters were introduced in evidence. Thus, the plaintiff proved the written contract between Delaware Motors and the bank. The un-contradicted evidence was to the effect that Lowni Corporation and the bank entered into an oral agreement to do business under the same terms as existed between Delaware Motors and the bank. Both Drimer and Schuller testified that the bank agreed to these terms. Their testimony is supported by over 34 exhibits showing that the bank did actually operate under this agreement. Furthermore, it received compensation for its services.
The bank also urges on this appeal that it and its vice president, Calhoun, were without authority to “handle title papers” due to Section 660.10, Florida Statutes, F.S.A., which prohibits the exercising of certain duties by state banks which do not have trust powers. The bank has submitted no proof as to its organization and powers. It has not even shown that the activity engaged in here is one prohibited by Section 660.10. It has, however, held out to the public by the advertising contained on its stationery, some 40 or more pieces being in evidence, that it has “State-wide Trust Facilities.” Furthermore, it has engaged in this type of transaction with another company over a period of several months.
The only authority cited by the appellant for this point is Ferguson v. Five Points National Bank of Miami, 187 So.2d 45 (Fla.App.3d 1966), wherein a national bank refused to perform a gratuitous contract to do something it was not permitted by law to do. It is observed that the Third District based its opinion at least in part upon the fact that Section 608.50, Florida Statutes, F.S.A. (which provides that a corporation when sued upon a contract cannot raise the de *732 fense of ultra vires), did not apply to national banks.
This is not a question of proving agency. If any error existed as to this point, appellant has failed to clearly demonstrate same.
We hold that the trial court was correct in denying the defendant’s motion for a directed verdict, and the judgment should be affirmed.
Affirmed.
CARROLL, DONALD K., Acting C. J., and SPECTOR, J., concur.